967 F.2d 591
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Sieu Mei Tu and Joseph Z. Tu, Plaintiffs/Appellants/Cross-Appellees,
v.
SOUTHERN PACIFIC TRANSPORTATION CO., Pacific Fruit Express
Co., Atchison, Topeka, Sante Fe Railroad Co., Santa Fe
Southern Pacific Corp., and Brotherhood of Railway, Airline,
and Steamship Clerks, Defendants/Appellees/Cross-Appellants.
 Nos. 89-16186, 89-16292.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Sept. 12, 1991.
Decided June 1, 1992.
 
 1
 Before CANBY and KOZINSKI, Circuit Judges, and CARROLL*, District Judge
 
 
 2
 MEMORANDUM**
 
 OVERVIEW
 
 3
 Plaintiffs Sieu Mei Tu and Joseph Z. Tu, her husband, appeal from the District Court's orders denying plaintiffs' motion to remand, and granting defendants' motions to dismiss and motions for summary judgment. Defendant Brotherhood of Railway, Airline and Steamship Clerks cross appeals.
 
 FACTUAL BACKGROUND
 
 4
 In May, 1962, Sieu Mei Tu ("Tu" or "plaintiff"), a woman of Chinese Ancestry who is now 64 years old, began working in various clerical positions for Pacific Fruit Express Company ("PFE"), a wholly-owned subsidiary of Southern Pacific Transportation Company ("SP"). Plaintiff was a member of the Brotherhood of Railway, Airline and Steamship Clerks ("Union").[1] When PFE merged with SP in 1985, the plaintiff was furloughed from her position. The Union filed a grievance on August 15, 1985, alleging that the collective bargaining agreement prohibited the company from laying off plaintiff and seven other clerical workers without payment of certain sums. On November 30, 1987, the arbitrator held against the Union, holding that the employer had a right under the collective bargaining agreement to lay off the clerks due to the decline in business experienced by PFE.
 
 
 5
 Before the case went to arbitration, the plaintiff filed a charge of discrimination with the California Department of Fair Employment and Housing ("DFEH"), alleging discrimination on the basis of race, sex or age. Pursuant to her right-to-sue letter from DFEH, plaintiff filed a lawsuit on September 26, 1986, in the San Francisco County Superior Court against PFE, SP, the Atchison, Topeka, Santa Fe Railroad Company ("ATSF"), Santa Fe Southern Pacific Corp. ("SFSP"), various individuals, and Doe corporations. The plaintiff's complaint alleged two counts of wrongful termination, violation of good faith and fair dealing, violations of 42 U.S.C. §§ 1981, 1983, 1985, California Government Code § 12900, et seq., and California Public Utilities Code § 453(a), conspiracy, and loss of consortium.[2]
 
 
 6
 The action was removed to the United States District Court for the Northern District of California on March 20, 1987. The plaintiff moved to remand the action to state court, which was denied by the Honorable D. Lowell Jensen on October 13, 1987. The District Court ruled that federal jurisdiction existed due to the plaintiff's membership in a union whose conditions of employment were governed by a collective bargaining agreement negotiated pursuant to the Railway Labor Act ("RLA"). 45 U.S.C. § 151, et. seq.
 
 
 7
 Defendants SP and PFE thereafter moved to dismiss the complaint. On April 6, 1988, the District Court did so, agreeing with the defendants that the wrongful termination claims and breach of good faith and fair dealing claim were "minor disputes" within the meaning of the RLA and must thus be referred to the National Railroad Adjustment Board ("NRAB") for mandatory arbitration. The Court declined to exercise pendent jurisdiction over the state discrimination claims and consortium claim.[3] The plaintiff was given leave to amend the complaint within 30 days in order to state a federal claim.
 
 
 8
 The plaintiff filed her First Amended Complaint on May 2, 1988, again alleging wrongful termination, breach of good faith and fair dealing, violations of 42 U.S.C. §§ 1981, 1983, 1985, California Government Code § 12900, et seq., and California Public Utilities Code § 453(a), conspiracy, and loss of consortium. The plaintiff added a claim against the Union for breach of fair representation.
 
 
 9
 On July 1, 1988, upon motion by defendants, the District Court dismissed defendant ATSF and SFSP pursuant to Fed.R.Civ.P. Rule 4(j), for plaintiff's failure to timely serve. Further, the District Court again dismissed Counts 1-3 alleging wrongful termination and breach of good faith and fair dealing, and Count 7 for intentional infliction of emotional distress, as "minor disputes" subject to mandatory arbitration. The Court further dismissed Count 5, alleging conspiracy of all defendants to merge SP with ATSF and cease operations of PFE in order to avoid their contractual responsibilities to plaintiff, holding that the ICC was the proper forum for the initial determination of violations of 49 U.S.C. § 11347. Finally, the Court dismissed the claim against the Union for failing to file within the applicable statute of limitations. Two counts remained: the District Court exercised pendent jurisdiction over plaintiff's claim for discrimination and plaintiff Joseph Tu's claim for loss of consortium against defendants SP and PFE; the Court construed the claims as state claims for discrimination.[4]
 
 
 10
 On January 5, 1989, defendants PFE and SP filed a motion for summary judgment which was granted on February 6, 1989. The Court held that although the plaintiff had established a prima facie case of employment discrimination, the defendants had introduced substantial proof of a nondiscriminatory, legitimate reason for her furlough, that is, that PFE had experienced economic decline and the plaintiff's position was not needed at SP when PFE's business was transferred to the parent company. Further, the plaintiff had not introduced sufficient evidence to satisfy her burden of showing that the defendants' asserted nondiscriminatory reason was pretextual. Because Joseph Tu's claim for loss of consortium was wholly reliant on the success of plaintiff Sieu Tu's claims, that claim was dismissed. Judgment was entered on February 8, 1989.
 
 
 11
 The plaintiff thereafter moved for reconsideration. On May 5, 1989, the Court denied the motion for reconsideration regarding summary judgment to defendants SP and PFE, but granted the motion for reconsideration as to the Union. The Union appeals this ruling.
 
 
 12
 The plaintiff filed a Second Amended Complaint on June 2, 1989, again alleging wrongful termination, breach of good faith and fair dealing, violations of 42 U.S.C. §§ 1981, 1983, 1985, California Government Code § 12900, et seq., and California Public Utilities Code § 453(a), conspiracy, loss of consortium, and breach of fair representation by the Union. The Union responded to the second amended complaint by filing a motion for summary judgment. The District Court granted that motion on August 14, 1989, holding that the plaintiff had made no evidentiary showing that the Union's actions were discriminatory or taken in bad faith. The Court also dismissed the individual union officials, which is not challenged by the plaintiff on appeal.
 
 
 13
 Plaintiff appeals the denial of her motion to remand to state court, the dismissal of defendants ATSF and SFSP for plaintiff's failure to timely serve under Fed.R.Civ.P., Rule 4(j), the dismissal of plaintiff's claims of conspiracy and intentional infliction of emotional distress, the denial of her request for more time for discovery, and the granting of summary judgment in favor of defendants SP, PFE and the Union.
 
 
 14
 The Union appeals the District Court's finding that the statute of limitations for plaintiff's breach of fair representation claim had not lapsed.
 
 DISCUSSION
 
 15
 (1) Denial of plaintiff's motion to remand
 
 
 16
 The denial of a motion to remand to state court is reviewed de novo. Chmiel v. Beverly Wilshire Hotel Co., 873 F.2d 1283, 1285 (9th Cir.1989).
 
 
 17
 Under the well-pleaded complaint rule, federal jurisdiction exists only if a federal question is presented on the face of a complaint. Caterpillar, Inc. v. Williams, 482 U.S. 386, 107 S.Ct. 2425, 2428, 96 L.Ed.2d 318 (1987). A case may not be removed based on a defense unless an area of state law has been completely preempted, and the claim is therefore considered as arising under federal law. Franchise Tax Bd. of Cal. v. Construction Laborers Vacation Trust, 463 U.S. 1, 24, 103 S.Ct. 2841, 2853, 77 L.Ed.2d 420 (1983).
 
 
 18
 Plaintiff first argues that all causes of action were pled under state law and that the District Court erred in failing to remand the suit. In point of fact, Count 4 of the original complaint alleges violations of 42 U.S.C. §§ 1981, 1983 and 1985.
 
 
 19
 The District Court denied the plaintiff's motion to remand, holding that the state law claims constituted "minor disputes" under the RLA, 45 U.S.C. § 151, et seq. If plaintiff's claims are characterized as "minor disputes" within the meaning of the RLA, state law is preempted and her exclusive remedy is under the RLA. Andrews v. Louisville & N.R. Co., 406 U.S. 320, 92 S.Ct. 1562, 32 L.Ed.2d 95 (1972). If the defendants' actions are "arguably" governed by the collective bargaining agreement or have a "not obviously insubstantial" relationship to the contract, the dispute is "minor" and governed by the RLA. Magnuson v. Burlington Northern, Inc., 576 F.2d 1367, 1369-70 (9th Cir.), cert. denied 439 U.S. 930, 99 S.Ct. 318, 58 L.Ed.2d 323 (1978). Alternatively, "minor" disputes involve the "interpretation or application of collective bargaining agreements." Edelman v. Western Airlines, Inc., 892 F.2d 839, 843 (9th Cir.1989).
 
 
 20
 The plaintiff argues that reference to the collective bargaining agreement is unnecessary, and that the action can therefore be decided under state law. Plaintiff contends that she and her employer have a "common law agreement" arising out of a letter written on December 18, 1978, by plaintiff's employer in order to assist Mrs. Tu in her father's immigration to the United States. The letter states:
 
 
 21
 Mrs. Tu was employed by this company on May 31, 1962 and has worked continuously for us from that date. Her position with this company is not only permanent in nature but she also is, under our contract with the Brotherhood of Railway, Airline & Steamship Clerks, "fully protected" so that in the unlikely event we were not to have a job for her, she would continue to be paid under that contract until she reaches age 65 and can retire under the provisions of Railroad Retirement Act and receive the appropriate pension therefrom ...
 
 
 22
 She is, and has always been, a valued employee and even if her present position were to be eliminated, we would find some other position for her to hold as we would not want to lose her services.
 
 
 23
 The letter on which plaintiff bases her claims refers to the collective bargaining agreement as the source by which the plaintiff is "fully protected". Further, plaintiff's complaint alleges that certain promises were implied "by said defendant's contracts with plaintiff's bargaining agent," and that plaintiff is "a beneficiary of contracts of employment entered into between defendant PFE and defendant [Union]." Reference to the collective bargaining agreement in the complaint and reliance on the contract through the grievance process brings the complaint within federal preemption. Newberry v. Pacific Racing Ass'n, 854 F.2d 1142, 1147 (9th Cir.1988).[5]
 
 
 24
 While plaintiff cites Caterpillar, Inc., supra, for the contention that remand is required where an employee alleges breach of an individual employment contract, in Caterpillar the employees relied on contracts made while they were salaried employees not covered by a collective bargaining agreement. Here, the plaintiff was covered by the collective bargaining agreement at all relevant times. In addition, "any independent agreement of employment could be effective only as part of the collective bargaining agreement." Stallcop v. Kaiser Foundation Hospitals, 820 F.2d 1044, 1048 (9th Cir.1987), citing Olguin v. Inspiration Consol. Copper Co., 740 F.2d 1468, 1474 (9th Cir.1984). Thus, plaintiff's claims are "arguably" governed by the collective bargaining agreement and have a "not obviously insubstantial" relationship to the contract.
 
 
 25
 The plaintiff also argues that under 28 U.S.C. § 1445(a), all civil actions against a railroad arising under the Federal Employer's Liability Act ("FELA"), 45 U.S.C. §§ 51-60, are not removable. However, the plaintiff has not alleged a claim under FELA.
 
 
 26
 The District Court properly denied the plaintiff's motion to remand, and this Court has jurisdiction pursuant to 45 U.S.C. § 151, et seq.
 
 
 27
 (2) Dismissal of defendants ATSF and SFSP for plaintiff's failure to timely serve under Fed.R.Civ.P., Rule 4(j)
 
 
 28
 This Court reviews a dismissal of a complaint pursuant to Rule 4(j) for abuse of discretion. Wei v. State of Hawaii, 763 F.2d 370 (9th Cir.1985).
 
 
 29
 On July 1, 1988, the District Court dismissed defendants ATSF and SFSP for plaintiff's failure to serve the defendants within 120 days, finding that plaintiff had not demonstrated good cause for her failure to do so.
 
 
 30
 Plaintiff first argues that the District Court in fact gave her an extension of time to serve defendants ATSF and SFSP, based on the following colloquy during the hearing on the motion to remand:
 
 
 31
 THE COURT: I think we also ought to schedule a status conference on this matter for about 60 days. Could you give us a date in November?
 
 
 32
 MR. KUBBY [plaintiff's counsel]: Your honor, if it's going to be necessary to serve all of the other defendants, I wonder if 60 days ...
 
 
 33
 THE COURT: Maybe we'll give you some more time than that. There isn't any real reason to have it earlier. Let's put it on December 16th. That will be at 9:00 o'clock and we'll review where we are at that time. In the meantime you can discuss this issue among yourselves.
 
 
 34
 This language--ambiguous at best--does not clearly indicate that the District Court extended the time for service. Further, the plaintiff did not raise this issue before the District Court, and Rule 46 of the Federal Rules of Civil Procedure provides that a party "should make [ ] known to the court the action which the party desires the court to take or the party's objection to the action of the court and the grounds therefor ..." The limited exceptions to the general rule that failure to raise an issue in the trial court will prevent review include, (1) when review is necessary to prevent a miscarriage of justice or to preserve the integrity of the judicial process, (2) when a change in law raises a new issue while an appeal is pending, and (3) when the issue is purely one of law. Javanovich v. United States, 813 F.2d 1035, 1037 (9th Cir.1987), citing Bolker v. Commissioner of Internal Revenue, 760 F.2d 1039, 1042 (9th Cir.1985). Plaintiff does not argue the applicability of these exceptions, and none of these factors militates in favor of their application. Plaintiff cannot therefore argue on appeal that the District Court extended the time period for service.
 
 
 35
 Next, plaintiff argues that she showed good cause for her failure to serve defendants. Plaintiff has the burden of showing good cause. Geiger v. Allen, 850 F.2d 330 (7th Cir.1988); Townsel v. Contra Costa County, CA, 820 F.2d 319, 320 (9th Cir.1987). First, plaintiff contends that she purposefully did not serve ATSF and SFSP due to defendant SP's request that plaintiff delay service on those defendants in order to facilitate settlement. However, plaintiff cites nothing in the record to support this contention.[6]
 
 
 36
 Second, plaintiff argues that she had good cause to believe that the case would be remanded to the California state court, where three years is allowed for service. However, given that plaintiff's complaint alleged violations of federal statutes, including 42 U.S.C. §§ 1981, 1983, and 1985, and explicitly referred to plaintiff's "bargaining agent" thus implicating the collective bargaining agreement, plaintiff's belief that the case would be remanded was unreasonable, and not good cause for failure to serve the remaining defendants in the case.
 
 
 37
 The plaintiff also argues that the District Court's dismissal of defendants ATSF and SFSP only applied to the original complaint, as the first amended complaint had been served by the date of the dismissal. However, this argument was raised in plaintiff's reply brief, and an appellant "cannot raise a new issue for the first time in [her] reply brief." Eberle v. City of Anaheim, 901 F.2d 814, 818 (9th Cir.1988). Moreover, the District Court's order dismissed the first amended complaint.
 
 
 38
 Plaintiff also contends that the District Court erred by dismissing the second amended complaint, contending that the filing of the second amended complaint brought all defendants who had been previously dismissed back into the lawsuit. The plaintiff argues, "All parties who have appeared in an action remain in the action until a final judgment is rendered." However, a final judgment was rendered on February 6, 1989, before the second amended complaint was filed on June 2, 1989.
 
 
 39
 Next, the plaintiff argues that Rule 4(j) is not applicable in removed cases, and that Rule 81(c) applies instead.[7] Again, this argument was raised in plaintiff's reply brief, and issues raised for the first time in appellant's reply brief need not be considered. Eberle, 901 F.2d at 818 (9th Cir.1988).
 
 
 40
 Finally, plaintiff argues that the defendants ATSF and SFSP waived the Rule 4(j) objection by answering without raising objections to untimely process. Here again, plaintiff raised this issue for the first time in her reply brief. Eberle, 901 F.2d at 818 (9th Cir.1988).
 
 
 41
 The District Court's dismissal of ATSF and SFSP was not an abuse of discretion.
 
 
 42
 On appeal, defendants ATSF and SFSP have requested an award of sanctions against plaintiffs and their counsel pursuant to Fed.R.App.P. Rule 38, Fed.R.Civ.P. Rule 11, and 28 U.S.C. §§ 1912 and 1927. This Court declines to do so.
 
 
 43
 (3) Dismissal of conspiracy claim
 
 
 44
 This Court reviews de novo the dismissal of a complaint for failure to state a claim. Gobel v. Maricopa County, 867 F.2d 1201, 1203 (9th Cir.1989). Dismissal under Fed.R.Civ.P. 12(b)(6) is not appropriate "unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).
 
 
 45
 In Count 5 of the original and first amended complaint, plaintiff alleged that all defendants conspired to merge defendant SP into defendant ATSF, cease operations of PFE, and terminate plaintiff in order to avoid their "contractual and moral responsibilities" to plaintiff. On July 1, 1988, the District Court dismissed this count in the first amended complaint as to all defendants. The Court ruled, in part:
 
 
 46
 Insofar as a private cause of action might exist for termination due to the aborted merger, this Court concludes that it is not the proper forum for an initial determination of any claimed violation of 49 U.S.C. § 11347, which provides for employee protection in any rail carrier merger. See, Walsh v. United States, 723 F.2d 570 (7th Cir.1983), Engelhardt v. Consolidated Rail Corp., 594 F.Supp. 1157, 1164 (N.D.N.Y.1984).
 
 
 47
 When plaintiff filed her second amended complaint on June 2, 1989, she alleged a violation of 49 U.S.C. § 11705, stating that the Interstate Commerce Commission (ICC) had terminated its proceedings and allowed SP employees to pursue civil remedies. Plaintiff challenges the dismissal of the second amended complaint.
 
 
 48
 Defendant SFSP is a holding company formed in contemplation of the proposed merger. The holding companies of SP and ATSF had merged when defendant SFSP acquired the stock of SP in December of 1983 in an independent voting trust. When the ICC denied the proposed merger on October 10, 1986, SFSP was required to divest its interest in either SP or ATSF, and sold the stock of SP to Rio Grande Industries. The voting trust was dissolved on October 13, 1988 when that acquisition was approved.
 
 
 49
 On February 9, 1989, the ICC concluded that it could not provide protection for those employees harmed by any actions taken in anticipation of the merger:
 
 
 50
 [W]e do not have the authority to impose labor protection as a condition of our action disapproving a merger proposal. Section 11347 speaks in terms of approved transactions....
 
 
 51
 * * *
 
 
 52
 * * *
 
 
 53
 If any actions adverse to employees are shown to have been ordered by [SFSP] in anticipation of consolidation and in violation of the provision of 49 U.S.C. § 11343, which prohibits common control absent Commission approval, the adversely affected individuals have a remedy as provided by 49 U.S.C. § 11705. [SP] employees who believe they were harmed by actions taken in anticipation of the proposed [SP]-ATSF consolidation would be required to show, in addition to causation, that [SFSP] exercised unlawful control of [SP], in violation of the Act or the conditions in our approval of [SFSP's] voting trust for [SP] stock. Persons injured by a carrier violating the Act or an order of the Commission may file suit, and the carrier is liable for the damages sustained as a result of those violations. 49 U.S.C. § 11705. We do not think that the essentially factual matters that would be in issue in a civil proceeding are such that would require the exercise of administrative expertise, so as to invoke the doctrine of primary jurisdiction. [Citations omitted].
 
 
 54
 However, this Court has held that there is no private right of action pursuant to 49 U.S.C. § 11705 due to the exclusive jurisdiction of the ICC. In Kraus v. Santa Fe Southern Pacific Corp., 878 F.2d 1193 (9th Cir.1989), plaintiffs had brought suit against SP, SFSP, and ATSF, stemming from plaintiffs' allegations that ATSF had induced SP to terminate plaintiffs in order to avoid post-merger liabilities which may have been imposed by the ICC. Plaintiffs alleged state law claims of tortious interference with economic relations[8] and a federal claim pursuant to 49 U.S.C. § 11343 for unauthorized merger or acquisition of control by ATSF over SP. This Court held:
 
 
 55
 Neither 49 U.S.C. § 11343(a), however, nor any other provision of the subchapter governing combinations of carriers, provides for any remedy by way of a private civil damage action for violation of its provisions ...
 
 
 56
 The jurisdictional provision upon which plaintiffs attempt to rely is contained in a separate statutory subchapter relating to the enforcement of interstate commerce laws and regulations. The precise provision relied upon is 49 U.S.C. § 11705(b)(2), which states that a carrier is "liable for damages sustained by a person as a result of an act or omission of that carrier in violation of [the ICA]" ...
 
 
 57
 [T]he subchapter of the ICA relating to mergers specifically provides that "the authority of the Interstate Commerce Commission under this subchapter is exclusive." 49 U.S.C. § 11341. Under the statutory grant of authority over mergers, the ICC, and not the courts, has been given authority to define what constitutes an unauthorized merger or acquisition of control within the meaning of the statute.
 
 
 58
 * * *
 
 
 59
 * * *
 
 
 60
 We agree with [ATSF] that the provision upon which plaintiffs rely, 49 U.S.C. § 11705(b)(2) & (c)(1), authorizes court enforcement for violations of the merger provisions only after the ICC has considered whether the alleged violations have occurred.
 
 
 61
 Kraus, 878 F.2d at 1197-1198. There has been no finding of a violation by the ICC in this case. Further, this Court specifically rejected the contention that the February 9, 1989 ICC decision, quoted above, conferred a private right of action. Kraus, 878 F.2d at 1198, n. 2. Thus, the District Court here properly dismissed Count 5 as to all defendants.
 
 
 62
 The defendants also argue that plaintiff's claim of conspiracy is preempted by the RLA as a "minor dispute". Because this Court has clearly held that there is no private right of action pursuant to § 11705, it is unnecessary to reach this issue.
 
 
 63
 (4) Dismissal of plaintiff's claim for intentional infliction of emotional distress
 
 
 64
 The dismissal of a claim is reviewed de novo. Gobel, 867 F.2d at 1203.
 
 
 65
 On July 1, 1988, the District Court dismissed Count 7 of plaintiff's complaint alleging intentional infliction of emotional distress. The Court correctly held that claims for emotional distress arising from termination are subject to mandatory arbitration under the RLA. Lewy, 799 F.2d at 1290 ("We have consistently held that the RLA preempts state tort claims by employees against railroads for wrongful discharge or for intentional infliction of emotional distress, where the alleged tortious activity is "arguably" governed by the collective bargaining agreement or has a "not obviously insubstantial" relationship to the labor contract, and where the "gravamen of the complaint is wrongful discharge"); Stallcop, 820 F.2d at 1049, citing Carter v. Smith Food King, 765 F.2d 916, 921 (9th Cir.1985); Olguin, 740 F.2d at 1475-76; Tellez v. Pacific Gas & Electric, 817 F.2d 536, 539 (9th Cir.1987) (actions for intentional and negligent infliction of emotional distress not preempted since they arose from conduct not covered by the collective bargaining agreement); Magnuson v. Burlington Northern, Inc., 576 F.2d at 1367.
 
 
 66
 (5) Denial of plaintiff's request for additional discovery time
 
 
 67
 The plaintiff next claims that the District Court was in error by failing to allow more time for discovery. This Court reviews a denial of discovery for abuse of discretion. Brae Transp., Inc. v. Coopers & Lybrand, 790 F.2d 1439, 1442 (9th Cir.1986), citing Foster v. Arcata Associates, Inc., 772 F.2d 1453, 1467 (9th Cir.1985), cert. denied, 475 U.S. 1048, 106 S.Ct. 1267, 89 L.Ed.2d 576 (1986).
 
 
 68
 Pursuant to Fed.R.Civ.P. Rule 56(f), a court may refuse an application for summary judgment or may continue a matter for further discovery if a party opposing a motion "cannot for reasons stated present by affidavit facts essential to justify the party's opposition." Plaintiff's counsel submitted an affidavit in opposition to the motions for summary judgment in which he averred that he had been unable to resolve discovery disputes with the defendants. He stated that the union cancelled the depositions of two union officials, and the continuance of the depositions was granted by a magistrate; the date then set for the deposition was cancelled due to plaintiff's counsel's trial schedule, and the union had not been cooperative in resetting the date.
 
 
 69
 The Union provided the declaration of Kathleen S. King, counsel for the Union, in reply to the plaintiff's opposition to summary judgment, stating that the Union had cooperated with all discovery requests; further, the Union had been willing to produce Union officials for deposition but plaintiff's counsel did not attempt to reschedule until the date on which defendants filed motions for summary judgment. Plaintiff's counsel also did not take the deposition of either Tom Ellen or Rick Fend, PFE officials whom plaintiff claims were instrumental in the discriminatory actions.
 
 
 70
 At the hearing on February 2, 1989, plaintiff's counsel asked the District Court for more time to take the depositions of the Union officials. The Court took the matter under advisement, and in the February 6, 1989 Order, the Court held that the plaintiff had had ample time for discovery.
 
 
 71
 Given the plaintiff's dilatory efforts at discovery and because the plaintiff has not indicated what facts this discovery was expected to show, Volk v. D.A. Davidson & Co., 816 F.2d 1406, 1416 (9th Cir.1987), the District Court did not abuse its discretion in denying the request for further discovery.
 
 
 72
 (6) Defendants SP's and PFE's motion for summary judgment
 
 
 73
 On February 6, 1989, the District Court granted defendants SP's and PFE's motion for summary judgment on Count 4 and Count 6.
 
 
 74
 This Court reviews the District Court's grant of summary judgment de novo. Miller v. Fairchild Industries, Inc., 797 F.2d 727 (9th Cir.1986), appeal after remand, 876 F.2d 718, opinion amended, 885 F.2d 498 (1989), cert. denied --- U.S. ----, 110 S.Ct. 1524, 108 L.Ed.2d 764 (1990). This Court must determine whether there are any genuine issues of material fact, viewing the evidence in the light most favorable to the moving party, and whether the District Court correctly applied the law. Ashton v. Cory, 780 F.2d 816, 818 (9th Cir.1986).
 
 
 75
 To establish a prima facie discrimination claim, plaintiff must show that she is (1) a member of a protected group; (2) her job performance was satisfactory; (3) she was discharged from her position; and (4) others not in the protected class were retained by defendants. McDonald v. Santa Fe Trail Transportation Co., 427 U.S. 273, 96 S.Ct. 2574, 49 L.Ed.2d 493 (1976). The burden then shifts to the defendants to articulate a legitimate nondiscriminatory reason for the action. If that burden is sustained, the burden then shifts back to the plaintiff to establish pretext by showing either that a discriminatory reason more likely than not motivated the employer or that the employer's explanation is unworthy of credence. Perez v. Curcio, 841 F.2d 255, 257 (9th Cir.1988), citing Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 256, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207 (1981).
 
 
 76
 The District Court held that the plaintiff had established a prima facie case of discrimination, finding that plaintiff is a member of three protected groups, her job performance was satisfactory since several of her superiors rated her work as exceptional, she was discharged, and other employees who were not female, Asian, or over 40 were transferred to positions at SP that the plaintiff was qualified to perform. Defendants challenge the District Court's finding that the plaintiff was eligible for transfer, but our disposition makes it unnecessary for us to rule on that point.
 
 
 77
 Second, the Court held that the defendants had rebutted the presumption of discrimination. The Court found that the defendants had offered "substantial proof supporting their contention that Sieu Mei was furloughed for economic reasons. PFE had experienced a severe decline in business due to increased competition from the trucking industry prior to the 1985 merger." The Court further pointed out that other employees who were not members of a protected class were also not transferred to SP.
 
 
 78
 The District Court then found that the plaintiff had not presented evidence which raised a genuine issue of fact challenging defendants' explanation of plaintiff's termination.
 
 
 79
 Plaintiff challenges the District Court's finding that the defendants had demonstrated a nondiscriminatory reason for her termination. First, she argues that the defendants are estopped from arguing that her termination was a result of PFE's economic decline due to representations contained in the alleged "common law agreement". The December 18, 1978 letter stated that plaintiff's position was permanent and "fully protected" under the union contract so that if the company did not have a job for her, she would continue to be paid and gain retirement benefits. She also argues that the decline in business clause does not apply to her due to the date at which she started working.
 
 
 80
 These arguments essentially restate the plaintiff's claim for wrongful termination. In order to find that defendants were "estopped" from asserting that plaintiff was fired due to economic reasons, this Court would have to interpret the collective bargaining agreement and resolve the wrongful termination claims on the merits. The plaintiff has not appealed the dismissal of the wrongful termination claims, and they are in any event subject to mandatory arbitration under the RLA.
 
 
 81
 Moreover, defendants submitted substantial evidence to support their contention that PFE was experiencing economic problems. Tom Ellen, former General Manager of PFE, submitted a declaration regarding his knowledge of the economic pressures created by deregulation, competition from the trucking industry, and a large wage increase awarded to the union. Under California law, reduction of work force necessitated by economic circumstances constitutes good cause for dismissal. Gianaculas v. Trans World Airlines, Inc., 761 F.2d 1391 (9th Cir.1985).
 
 
 82
 Richard Fend, Assistant Controller of PFE at the time the company was absorbed by the parent company, submitted a declaration stating that he was responsible for deciding which positions would be transferred to SP, and made that decision based on the job duties of a particular position, not the identity of the employee holding that position. He attached exhibits detailing which of the 16 clerks at PFE were furloughed and/or transferred to SP, which information was obtained from the company personnel files. Fifteen of the PFE clerks were over age 40; nine of these were transferred. Of the seven female clerks, four were transferred. Of the two Asian clerks, one was transferred to SP. Fend avers, "Ms. Tu was not transferred because, at the time, she was performing miscellaneous or general clerk functions almost all of which ceased to exist after October 1, 1985." The plaintiff did not depose either Ellen or Fend. The District Court reasonably found that the defendants had asserted legitimate, nondiscriminatory reasons for plaintiff's termination.
 
 
 83
 The plaintiff also challenges the District Court's finding that she did not present evidence rebutting defendants' explanation. However, little of plaintiff's evidence is admissible. Plaintiff asserts in her "Declaration in Opposition to Motion for Summary Judgement [sic]", that the work conditions were made intolerable so that she would voluntarily leave and that she was moved to positions that were designed to be terminated so that she would not receive job protection. These assertions have no foundation and are not within her personal knowledge. Plaintiff's allegations of sexual jokes contain no citation to the record.
 
 
 84
 Plaintiff testified in her deposition regarding friction with the management over expense reports; i.e. the plaintiff's manager, Rick Fend, was angry when she questioned his expense reports. She also testified that Walsh told her that she was fired because Rick Fend and Edna Clark (whose role is unclear) did not like her and that another supervisor stated that she had trouble with Fend. This testimony is inadmissible hearsay and fails to relate to plaintiff's claims of discrimination based on sex, race, or age. Defendants also argue that these discovery materials were not presented to the trial court, a fact which plaintiff does not contest. Daly-Murphy v. Winston, 837 F.2d 348, 351 (9th Cir.1988) (the reviewing court will normally not supplement the record on appeal with material not considered by the trial court).
 
 
 85
 In her deposition plaintiff also testified to derogatory remarks made about Chinese persons: Mr. Walsh, one of her supervisors, once stated that "pretty soon the Chinese would own San Francisco." Another time when the plaintiff had trouble working a new phone system, Rick Fend stated, "You can't talk English. You can't even push the button." The plaintiff testified that Fend made numerous remarks about Chinese, although she could not remember other comments. She also could not remember if any other employees made racially derogatory remarks to her. In Stallcop, supra, the plaintiff cited her supervisor's statement that she "did not know the English language" as proof of discriminatory conduct. The Court held, "derogatory ethnic statements, unless excessive and opprobrious, are insufficient to establish a case of national origin discrimination." Stallcop, 820 F.2d at 1050-51. The derogatory statements cited in this case are also not excessive and opprobrious. Also, the defendants assert that this deposition material was not presented to the District Court.
 
 
 86
 Although plaintiff claims that PFE intentionally caused its economic decline, her only evidence is her declaration that she was told not to answer the phone because PFE did not want the business.
 
 
 87
 The District Court did not err by holding that plaintiff had failed to demonstrate the existence of specific facts showing there is a genuine factual issue that defendants' reason for her termination was pretextual.
 
 
 88
 Plaintiff also claims that SP's failure to rehire her is retaliatory discrimination for bringing this lawsuit. This claim was not alleged in either the initial complaint or the first amended complaint;[9] the plaintiff does not address the applicability of the exceptions to the general rule against considering issues for the first time on appeal. Javanovich, 813 F.2d at 1037, citing Bolker, 760 F.2d at 1042. Thus, this issue will not be considered.
 
 
 89
 (7) Union's motion for summary judgment
 
 
 90
 Whether a union has breached its duty of fair representation is a mixed question of law and fact which this Court reviews de novo. Galindo v. Stoody Co., 793 F.2d 1502, 1513 (9th Cir.1986), citing United States v. McConney, 728 F.2d 1195, 1204 (9th Cir.) (en banc), cert. denied, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984); see also Johnson v. United States Postal Service, 756 F.2d 1461, 1465 (9th Cir.1985) (applying de novo standard to "ultimate findings"); but see Robesky v. Qantas Empire Airways Ltd., 573 F.2d 1082, 1091 (9th Cir.1978) (suggesting issue is a question for the trier of fact).
 
 
 91
 On August 14, 1989, the Court granted the defendant Union's motion for summary judgment, holding that plaintiff had made no evidentiary showing that the Union's actions were discriminatory or in bad faith and that the Union had adhered to established procedures for handling grievances.
 
 
 92
 To establish a breach of fair representation, the plaintiff must show that the Union's conduct was "arbitrary, discriminatory, or in bad faith." Galindo, 793 F.2d at 1513, citing Vaca v. Sipes, 386 U.S. 171, 190, 87 S.Ct. 903, 916, 17 L.Ed.2d 842 (1967). Union decisions regarding the handling of grievances are afforded wide latitude, and "a union's conduct may not be deemed arbitrary simply because of an error in evaluating the merits of a grievance ... or in presenting the grievance at an arbitration hearing." Galindo, 793 F.2d at 1515, citing Peterson v. Kennedy, 771 F.2d 1244 (9th Cir.1985), cert. denied, 475 U.S. 1122, 106 S.Ct. 1642, 90 L.Ed.2d 187 (1986) (emphasis added by Galindo author).
 
 
 93
 In Galindo, this Court found that the Union representative's failure to bring up an issue at arbitration reflected a judgmental decision. Similarly here, the Union's failure to address the plaintiff's individual considerations--her claims that she was exempt from the decline in business clause of the collective bargaining agreement and her claims of discrimination based on sex, race, and age--reflect a judgmental decision. As in Galindo, "this representation was, at worst, negligent." Galindo, 793 F.2d at 1515. Negligent conduct may only be the basis of a fair representation claim when "the individual interest at stake is strong and the union's failure to perform a ministerial act completely extinguishes the employee's right to pursue his claim." Dutrisac v. Caterpillar Tractor Co, 749 F.2d 1270, 1274 (9th Cir.1983) (emphasis added). The Union's conduct in question here was not ministerial.
 
 
 94
 In order to recover for a breach of fair representation, the plaintiff must also establish the underlying grievance had merit. Skillsky v. Lucky Stars, Inc., 893 F.2d 1088 (9th Cir.1990). As discussed above, the plaintiff did not introduce evidence to support her claim of discrimination. In addition, plaintiff has not introduced specific evidence to support her claim that the decline in business clause did not apply to her. This Court has only the language of the decline in business clause to evaluate: "the provisions of this section will not apply to Pacific Lines employees in the San Francisco General Offices with seniority dates of March 16, 1963 or earlier." On its face, this applies only to certain [SP] employees of Pacific Lines working in the San Francisco office, whereas the plaintiff was an employee of PFE working in Brisbane, California at the time of the termination. Moreover, the plaintiff introduced no evidence that there was a conflict of interest by the Union which resulted in its failure to effectively represent plaintiff.[10]
 
 
 95
 The District Court did not err in granting summary judgment to the Union.
 
 
 96
 (8) The cross-appeal
 
 
 97
 On February 6, 1989, the District Court ruled that plaintiff's breach of fair representation claim against the defendant Union was barred by the six month statute of limitations in section 10(b) of the National Labor Relations Act. The Court later reconsidered and reversed its previous ruling that the plaintiff's claim was barred, concluding that the limitations period did not begin to run until the plaintiff was informed of the arbitrator's decision. The Union cross-appeals this issue. However, since the District Court properly granted summary judgment to the Union on plaintiff's breach of fair representation claim, it is not necessary for this Court to decide the cross appeal, and it will be dismissed as protective.
 
 CONCLUSION
 
 98
 In summary, the District Court properly denied the plaintiff's motion to remand since her claims were arguably governed by the collective bargaining agreement and she alleged violations of 42 U.S.C. §§ 1981, 1983, and 1985. Second, the District Court properly dismissed defendants ATSF and SFSP for plaintiff's failure to timely serve under Fed.R.Civ.P. Rule 4(j). The District Court also did not err in dismissing Count 5, alleging conspiracy, since there is no private right of action pursuant to 49 U.S.C. § 11705. Further, the plaintiff's claim for intentional infliction of emotional distress was properly dismissed as a "minor dispute" subject to mandatory arbitration. The District Court did not err in not allowing the plaintiff more time for discovery, and properly granted summary judgment to defendants SP and PFE. Plaintiff failed to demonstrate the existence of specific facts showing a genuine factual issue that defendants' claims of economic decline were pretextual.
 
 
 99
 In addition, this Court need not decide the cross appeal because the District Court properly granted summary judgment to the Union on plaintiff's breach of fair representation claim. The cross appeal will therefore be dismissed as protective.
 
 
 100
 Finally, this Court declines to award defendants ATSF and SFSP an award of sanctions against plaintiffs and their counsel.
 
 
 101
 APPEAL NO. 89-16186 AFFIRMED; CROSS-APPEAL NO. 89-16292 DISMISSED. Costs in favor of appellees.
 
 
 
 *
 The Honorable Earl H. Carroll, United States District Judge for the District of Arizona, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Effective September 1, 1987, the Union changed its name to Transportation Communications International Union
 
 
 [2]
 As only the consortium claim involves plaintiff Joseph Tu, the singular "plaintiff" will be used throughout this disposition
 
 
 [3]
 The District Court did not address the claims for violations of 42 U.S.C. §§ 1981, 1983 and 1985, or the conspiracy count
 
 
 [4]
 The District Court did not explain why it did not address the claims under 42 U.S.C. §§ 1981, 1983, and 1985, although the plaintiff does not challenge this decision, presumably because the plaintiff seeks to remand the action
 
 
 [5]
 In Lingle v. Norge Division of Magic Chef, Inc., 486 U.S. 399, 108 S.Ct. 1877, 1885, 100 L.Ed.2d 410 (1988), the Supreme Court held that state law is preempted by § 301 of the Labor Management Relations Act of 1947 "only if such application requires the interpretation of a collective-bargaining agreement." The Court in Newberry, 854 F.2d at 1147, determined that reference to the collective bargaining agreement in the complaint and reliance on the grievance process required interpretation of the collective bargaining agreement
 
 
 [6]
 Plaintiff cites Kraus v. Santa Fe Southern Pacific Corp., 878 F.2d 1193 (9th Cir.1989), for the contention that SP's request not to serve ATSF and SFSP was in fact the request of ATSF and Santa Fe. In Kraus, this Court had recited evidence introduced at trial that all non-rail operations between SFSP and SP had been merged. However, plaintiff cites no authority for her argument that SP's request not to serve the other defendants should be attributed to the other defendants
 
 
 [7]
 Rule 81(c) states, in relevant part:
 In a removed action in which the defendant has not answered, the defendant shall answer or present the other defenses or objections available under these rules within 20 days after the receipt through service or otherwise of a copy of the initial pleading setting forth the claim for relief upon which the action or proceeding is based, or within 20 days after the service of summons upon such initial pleading, then filed, or within 5 days after the filing of the petition for removal, whichever period is longest.
 
 
 [8]
 The plaintiffs' recovery on this count was upheld
 
 
 [9]
 Plaintiff argues that the retaliatory discrimination claim was explicitly alleged in the second amended complaint; however, this complaint was filed after the District Court granted defendants' motion for summary judgment
 
 
 [10]
 Plaintiff references only counsel's statements during plaintiff's deposition and at hearing